UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS

| | | |
|---|---|---|
| ISAAC W. CAPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   14-441 |
| | ) | |
| KEVIN DRAKE, JARED FREEMAN, | ) | |
| SHAWN ISAACS, JAMES TROGOLO, | ) | |
| KEVIN ROYE, and BRICE SHAFFER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DRAKE, FREEMAN, ISAAC'S MOTION FOR SUMMARY JUDGMENT**

Now Come Defendants, KEVIN DRAKE, JARED FREEMAN, and SHAWN ISAACS, by and through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and for their Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, state as follows:

## I.   INTRODUCTION

Plaintiff brings this action Pursuant to 42 U.S.C § 1983 and § 1988, alleging Defendants, three Illinois State Police Troopers, used excessive force during an arrest of Plaintiff for driving under the influence.

On April 17, 2012, at approximately 7:10 p.m., Defendants Drake, Freeman and Isaacs responded to a "rolling domestic[1]" incident involving a vehicle traveling northbound on Interstate 57. Defendants Drake, Freeman, and Isaacs arrived at the Days Inn parking lot near the Benton exit, where local police officers James Trogolo, Kevin Roye, Brice Shaffer waited with Plaintiff and his female passenger, Sayeh Nadeff.

---
[1] Defendants define "rolling domestic" as a report of a domestic fight in a car or other type of vehicle.

Defendants observed Plaintiff displaying signs of intoxication including slurred speech, blood shot eyes, and a red complexion.  In addition, Defendants noticed that Plaintiff, Nadeff and the car were covered in a dark red liquid, which was apparently wine.  Before Drake began administering a Field Sobriety Test on Plaintiff, Plaintiff stated that Naddeff was throwing wine around.

Drake conducted three field sobriety tests on Plaintiff; Plaintiff failed all three.  Drake next began describing to Plaintiff the portable Breathalyzer test.  Plaintiff refused to take the test.  Drake ordered Plaintiff to put his hands behind his back while Drake and Freeman grabbed one of Plaintiff's arms.  Plaintiff ducked down and pulled away.  At this point, another officer deployed a taser.  Plaintiff fell to the ground but continued to resist arrest by refusing to turn onto his stomach to be cuffed.  Plaintiff was ultimately tased three times.

Defendants Drake, Freeman and Isaacs did not have tasers at the time of the arrest.  Isaacs made no physical contact with Plaintiff.  Drake and Freeman made physical contact only when they attempted to place cuffs on Plaintiff.  After Plaintiff was finally cuffed, Drake transported Plaintiff in his squad car to the station.

Plaintiff alleges that Defendants used excessive force and failed to intervene by not stopping the local law enforcement officers from tasing Plaintiff.  Plaintiff cannot establish a prima facie case for excessive force or failure to intervene against Defendants Drake, Freeman, and Isaacs.  Plaintiff resisted arrest and was justifiably arrested.  Plaintiff has not produced any evidence of injury.  Even if the Court were to find that excessive force was used by the other defendants, Plaintiff has no evidence that Defendants Drake, Freeman and Isaacs had a realistic opportunity to intervene.  Moreover, Plaintiff's claim is barred by Qualified Immunity.

Defendants respectfully request this Court enter summary judgment in their favor for the reasons addressed below.

## II.     UNDISPUTED MATERIAL FACTS

1. Defendants Kevin Drake, Shawn Isaacs, and Jared Freeman, at all relevant times to this matter, were employed by the Illinois State Police as troopers. (d/e 2 at ¶ 4).

2. Defendants Kevin Roye and Brice Shaffer, at all relevant times to this matter, were employed by the Franklin County Deputy Sheriffs. (d/e 2 at ¶ 5).

3. Defendant James Trogolo, at all relevant times to this matter, was employed as a West Franklin Police Officer. (d/e 2 at ¶ 6).

4. Jon Graskewicz, at all relevant times to this matter, was employed as a patrolman with the West City Police Department. (Ex. J, deposition of Jon Graskewicz, 10:4-9).

5. Mark Woodsides, at all relevant times to this matter, was employed as a part-time patrolman with the West City Police Department. (Ex. K, deposition of Mark Woodsides, 8:14-17).

6. Plaintiff, Isaac Capps, is a resident of Dundas, Illinois, near Olney Illinois. (Ex. A, deposition of Isaac Capps, 4:20).

7. Sayeh Naddaf, Plaintiff's fiancé, is a resident of Dundas, Illinois. (Ex. A, 6:23-24).

8. On April 17, 2012, Plaintiff and Naddaf traveled from Dundas, Illinois to West Frankfort. (Ex. A, 54:21-24).

9. On April 17, 2012, after signing up for the tree-trimmers union and shopping, Plaintiff and Naddaf visited two wineries, Blue Sky Winery and Owl Creek Winery. (Ex. A, 59:22-24; 60:8-17).

3

10. Plaintiff and Naddaf had two glasses of wine each.  (Ex. H, 4:7).

11. As Plaintiff and Naddaf were driving home, northbound on I-57, Plaintiff swerved and skidded sideways, almost losing control of the vehicle.  (Ex. A 81:1-7).

12. A witness, Cullen Smith, observed Plaintiff swerve, and called 911.  (Ex. L, Drake's report with Smith's statement.)  Smith later gave a statement to Isaacs:

> I was traveling North on I-57 at MM59.  I saw a small car gold or silver in color lose control and lock brakes, slide sideways, then correct.  I paid little attention until I saw the driver hitting at the passenger then almost lose control again.  At that time I called 911 and was put in touch with Illinois State Police.  I stayed in contact with State Police until Exit 71 where I am now.  I saw repeatedly the driver grab and strike at passenger.  Officers took control at the Days Inn.

(Ex. L).

13. On April 17, 2012, at approximately 7:10 pm, Plaintiff and Naddaf were pulled over by Defendant Trogolo while traveling northbound on Interstate 57.  (Ex. A, 90:11-21.; Ex. E, deposition of James Trogolo, 19:9-13).

14. Trogolo, Plaintiff, and Naddaf pulled off the highway and parked at the Days Inn parking lot in West City.  (Ex. A, 90:22-24).

15. Plaintiff exited his vehicle without his shirt on, at which point Defendant Trogolo observed that there was a purple liquid he believed to be wine all over the inside of the vehicle and a strong aroma of alcohol coming from Plaintiff's breath and the vehicle.  (Ex. A. 92:4-9; Ex. E, 22:18-24, 23:1-9).

16. Defendants Roye, Shaffer, Drake, Isaacs and Freeman heard an ISPERN broadcast of a rolling domestic, and responded to the call at the Days Inn parking lot.  (Ex. C, 9:4-6; Ex. D, 9:5-6; Ex. F, 30:2-4; Ex. G, 10:8-11).

17. Drake was the first Illinois State Police (ISP) trooper on the scene.  (Ex. B, 16:3-5).

18. Drake, Freeman, and Isaacs observed Plaintiff showing signs of intoxication, including stumbled speech.  (Ex. B, 16:9-11; Ex. D, 12:9-13; Ex. C, 16:6-11).

19. A video taken from Drake's in-car camera exists.  The video starts at the time Drake drove to the Days Inn parking lot and ends when Drake arrived at the Franklin County Jail with Plaintiff.  (Ex. H, in-car camera video and transcript).

### The Following Facts are Depicted on the Video

20. Plaintiff admitted that the video accurately captures the events of April 17, 2012.  (Ex. A, 111:19-24).

21. Plaintiff told Drake that Naddef was "being crazy" and throwing wine around the car.  (Ex. H, 4:13-19).

22. Defendant Drake performed three field sobriety tests on Plaintiff including the horizontal gaze nystagmus, the walk and turn test, and the one-legged stance.  (Ex. C, 13:1-17).  Plaintiff failed all three tests.  (Ex. C, 16:6-12).

23. During the tests, Plaintiff slurred his speech and swayed back and forth.  (Ex. H).

24. Plaintiff told Drake that he trains police officers in Tennessee.  (Ex. H, 10:15-18)

25. Following the field sobriety tests, Defendant Drake began explaining to Plaintiff how to take the portable breathalyzer test (PBT).  (Ex. H).

26. Drake offered the PBT to Plaintiff two different times.  (Ex. H, 13, 13:7-24, 14:3-5).

27. Ultimately, Plaintiff refused to take the PBT.  (Ex. H; Ex. B, 18:8-13; Ex. M, Plaintiff's response to Defendant Trogolo's interrogatory No. 13).

28. Drake then ordered Plaintiff to place his hands behind his back.  (Ex. H, 14:9-10). Defendant Isaacs also ordered Plaintiff to place his hands behind his back.  (Ex. H, 14:17; Ex. D, 15:12-15).

29. Drake and Freeman placed their hands on Plaintiff's arms in order to put handcuffs on him. (Ex. B, 36:3-6).

30. Plaintiff tensed up his arms and turned away from Drake and Freeman. Plaintiff then lowered his body. (Ex. H, Ex. B, 36:8-10; Ex. C, 16:20-24).

31. Trogolo tased Plaintiff. (Ex. E, 29:24, 30:1-2). Trogolo believed the taser was ineffective so he delivered a "drive stun" creating a third point of contact at which point Plaintiff fell to the ground. (Ex. E, 32:11-24).

32. While on the ground, Plaintiff grabbed Trogolo's hand in an attempt to disarm him. (Ex. E, 32:18-19).

33. While on the ground, Plaintiff is told repeatedly by Trooper Drake and other officers on the scene to roll over. (Ex. H 15:7-21).

34. While on the ground, Plaintiff did not roll over or place his hands behind his back. (Ex. B, 7-8).

35. Eventually, other officers got Plaintiff's hands behind his back and Defendant Drake handcuffed Plaintiff and transported him to the Franklin County Jail. (Ex. B, 53: 12-14).

36. Defendants Drake, Isaacs and Freeman did not carry tasers at the time of the incident and did not tase Plaintiff. (Ex. B, 40:10-17, Ex. C, 31:7-10; Ex. D, 23:19-21).

### Facts Specific to Defendant Drake

37. Plaintiff testified that Drake did not use force against him. (Ex. A, 200:4).

38. Defendant Drake considered Plaintiff to be resisting arrest and Plaintiff's actions threatening when Plaintiff tensed up and turned around after being told to put his hands behind his back. (Ex. B, 65:20-22, 66:6-11).

39. At the time of the incident, Defendant Drake did not having training with tasers. (Ex. B, 68:21-24).

40. During the incident, Defendant Drake thought that Plaintiff was capable of being dangerous because Plaintiff stated he had trained cops and that he had pre-paid legal. (Ex. H, 8:3-6, 10:15-18; Ex. B, 31:23-24, 32:1-4).

41. Defendant Drake felt the whole incident escalated quickly. (Ex. B, 68:21-24).

42. Plaintiff did not complain of any injuries (other than that the handcuffs were too tight for his wrists) on the way to the jail or ask for medical attention of any kind. Defendant Drake did not observe that Plaintiff was injured in any way when he put him in his squad car and transported him to the jail. (Ex. B, 69:21-24, 70:1-6; Ex. A, 191:15-21, 193:21-24, 194:1-7).

43. Defendant Drake did not know how many times a taser was deployed until he watched the video. (Ex. B, 79:20-23).

44. Defendant Drake did not have any warning or knowledge from the officer(s) deploying the taser that a taser was going to be deployed. (Ex. B, 797-14; Ex. A, 203:21-24, 204:1).

**Facts Specific to Defendant Jared Freeman**

45. The only time that Defendant Freeman touched Plaintiff is directly after Defendant Drake told him to put his hand behind his back and Defendant Freeman held one of Plaintiff's arms. (Ex. C, 16:20-24, 17:1-5).

46. Defendant Freeman believed that Plaintiff was dangerous because he appeared to Freeman to be a strong, larger male. Defendant Freeman also considered the fact that a motorist had reported Plaintiff was committing domestic violence directly prior to this incident. (Ex. C, 14:16-22).

47. Defendant Freeman perceived the fact that Plaintiff tensed up, turned around and lowered his body after being told to put his hands behind his back as being resistive to arrest and as an aggressive maneuver. (Ex. C:16:20-24, 17:1-5).

48. Defendant Freeman did not know a second taser was deployed until he watched the video. (Ex. C, 25:13-17, 38:5-9).

49. Defendant Freeman was unaware that tasers would be deployed on Plaintiff until it was actually happening. (Ex. C, 37:23-24; 38:1-4).

**Facts Specific To Defendant Shawn Isaacs**

50. Defendant Isaacs did not touch Plaintiff at any time during the incident. (Ex. D, 20:15-17).

51. Defendant Isaacs believed that Plaintiff resisted arrest by spinning around while troopers were trying to handcuff him and failing to comply with orders. (Ex. C, 30:12-24).

52. Defendant Isaacs believed that Plaintiff posed a threat to himself or others because he was being resistant and not following commands. (Ex. D, 27:17-19).

53. Defendant Isaacs did not know that a taser was being deployed until he heard it. (Ex. D, 20:5-8).

54. Defendant Isaacs testified that the incident happened quickly, and that he was not aware that a taser was going to be deployed while Plaintiff was on the ground until it was actually being deployed. (Ex. D, 25:2-5).

**ARGUMENT**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of establishing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252. "[I]n a § 1983 claim, the plaintiff bears the burden of proof on the constitutional depravation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Prince*, 615 F.3d 877, 881 (7th Cir. 2010).

In deciding a motion for summary judgment, a court can only consider sworn statements based on personal knowledge and other evidence that would be admissible at trial under the Federal Rules of Evidence. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. *Id.*; *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). However, conclusory allegations do not create issues of fact which forestall summary judgment. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (internal citation omitted) ("it is...axiomatic that a plaintiff's conclusory statements do not create an issue of fact").

### 1. Use of Force Was Reasonable

"In determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Such an analysis is inherently fact dependent, requiring consideration of such factors as the severity of the crime at issue, whether the person posed an immediate threat to the safety of the officers or others, and whether the person was actively resisting the officers. Id. at 396; *Miller v. Gonzales*, 761 F.3d 822, 829 (7th Cir. 2014).

In assessing such a claim, courts remain cognizant of the incredibly difficult task facing law enforcement officers called to address fluid situations. *Graham*, 489 U.S. at 396; *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013). Accordingly, the reasonableness of an officer's actions must be assessed from the perspective of a reasonable officer on the scene, not based on the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This assessment must include recognition that officers are often forced to make split second judgments in tense, uncertain, and rapidly evolving situations, as to the amount of force necessary in a particular situation. *Graham*, 490 U.S. at 396-97. The Courts will thus give considerable leeway to law enforcement officers' assessments regarding the degree of force appropriate in dangerous situations. *Abbot v. Sangamon County*, *Illinois*, 705 F.3d 706, 725-35 (7th Cir. 2013).

The reasonableness inquiry is an objective one, which examines whether the officer's actions are objectively reasonable in light of the totality of the facts and circumstances confronting him or her, without regard for consideration of the officer's subjective intent or motivations. *Graham*, 490 U.S. at 397; *Miller*, 761 F.3d at 828-29; *Fitzgerald*, 707 F.3d at 733.

An officer's use of force is unreasonable if in light of all those circumstances at the time of the seizure, the officer used greater force than was reasonably necessary to effectuate the seizure. *Id*.

### a. Plaintiff was Resisting Arrest

Under the reasonableness standard of the Fourth Amendment, Courts have held that it is reasonable for police to move quickly "if delay 'would gravely endanger their lives or the lives of others," even if the actions proved with the benefit of hindsight to be a mistake. *Warden, MD. Penitentiary v. Hayden*, 387 U.S. 294, 298-99 (1967). Courts have stated that the Constitution is not blind to the need for officers to make split second judgments. *Id*.

Here, Defendant Drake arrived on the scene and began asking Plaintiff questions. Plaintiff told Drake that he had had two glasses of wine, and that his passenger was acting crazy and throwing wine around. (UMF 21). Defendants Drake, Freeman and Isaac each observed signs that Plaintiff was intoxicated. (UMF 18).

Defendant Drake administered three field sobriety tests. (UMF 22). Defendants testified, and the video clearly shows, that Plaintiff failed all three of these tests. (UMF 22). Following these tests, Defendant Drake offered the PBT to Plaintiff two different times, explaining each time how Plaintiff was to use the device. (UMF 26). Plaintiff refused to take the test. (UMF 27).

Plaintiff may argue that Defendants did not say the words "you are under arrest." Such argument is a red herring, as no such requirement exists for a legal arrest. An arrest is the archetypical "seizure of a person under the Fourth Amendment." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). A person is "seized when his or her freedom of movement is terminated or restrained by intentionally applied physical force or submission to an assertion of authority." *Id*. A seizure rises to the level of an arrest when a reasonable person in the

11

suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *Id*.

When Defendant Drake and Defendant Isaacs told Plaintiff to put his hands behind his back and Defendant Drake and Defendant Freeman grabbed Plaintiff's arms to handcuff him, Plaintiff was clearly under arrest. (UMF 28). Any reasonable person would understand that an order to put one's hands behind their back, coupled with two officers grabbing one's arms in order to handcuff them, was an arrest. Following this, Plaintiff tensed up, spun around, and lowered his body in what Freeman perceived as an aggressive maneuver. (UMF 29, 30, 47). *See, Abbott v Sangmon County*, 705 F.3d at 720 (Under Illinois law, a person violates 720 ILCS 5/31-1(a) if he or she resists or obstructs even an unlawful arrest made by a known peace officer.) A person commits obstruction or resistance of a peace officer when, (1) knowing that one is a peace officer, (2) he or she knowingly resists or obstructs (3) the officer's performance of an authorized act. *Id*. at 721. Plaintiff knew that Drake, Isaacs and Freeman were peace officers and as explained more thoroughly below, Plaintiff's arrest was justifiable. Plaintiff's refusal to put his hands behind his back coupled with his movement away from the arresting officers clearly show that Plaintiff was resisting arrest.

    **b. Plaintiff Posed an Immediate Threat**

Defendant Drake thought many of Plaintiffs comments during the Field Sobriety tests indicated that he could be dangerous, including Plaintiff's statement that he trained cops and that he had pre-paid legal. (UMF 40). After Plaintiff began resisting arrest, Defendants Drake and Isaacs testified that the following events happened quickly. (UMF 41, 53). Defendant Freeman believed that Plaintiff was dangerous because he was a strong and larger man who reportedly had recently committed domestic violence. (UMF 46). Defendant Freeman also found the fact that

Plaintiff lowered his body after being told to put his hands behind his back to be a particularly aggressive maneuver. (UMF 47). Defendant Isaacs believed that Plaintiff posed an immediate threat because he was being resistant and not complying with commands. (UMF 52). The video shows that Plaintiff made several aggressive movements to get his arms away from Defendants Drake and Freeman. Based on the facts that were available to Defendants at the time (that Plaintiff was large, trained cops, intoxicated, and had possibly committed some type of domestic violence) it is reasonable that Defendants would have perceived that when Plaintiff resisted and spun away from them he posed an immediate threat.

### c. Use of Tasers was Reasonable

Tasers are considered non-lethal force. Courts have described tasers as "falling somewhere in the middle of the nonlethal-force spectrum." *Abbot*, 705 F.3d at 725. Courts have acknowledged that "the use of a taser, like the use of pepper spray or pain-compliance techniques, generally does not constitute as much force as so-called impact weapons, such as baton launchers and beanbag projectiles." *Id*.

Defendants Drake, Isaacs, and Freeman did not have tasers at the time of the incident and did not deploy a taser during the incident. (UMF 36). Nonetheless, under the circumstances depicted in the video, use of a taser was reasonable as a matter of law under these circumstances.

Courts have upheld a taser's use in a situation in which a person is refusing to move from a doorway and an officer believed that fellow officers in the blocked room needed assistance, *Clarett v. Roberts* 657 F.3d 664, 674-75 (7th Cir. 2011), and where a defendant "displayed an **unwillingness to accede to reasonable police commands**, and his actions suggested an intent to use violence to fend off further police action," *United States v. Norris*, 640 F.3d 295, 202 (7th Cir. 2011)(emphasis added).

13

Here, Plaintiff refused to accede to the Defendant Drake's order to put his hands behind his back. Plaintiff pulled away from Defendant Drake and Freeman in order to prevent the officers from handcuffing him. Trogolo's use of the taser was reasonable in light of the fact that Plaintiff was not following Drake's reasonable commands. Once Plaintiff fell to the ground, Plaintiff continued to resist by refusing to turn over. (UMF 34). Thus, if Plaintiff was tased a second time while on the ground, this too was reasonable, as Plaintiff continued to show an unwillingness to follow commands.

### 2. Defendants Drake, Isaacs, and Freeman Did Not Have a Reasonable Opportunity to Intervene

Courts have recognized that "police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do may be held liable." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285, (7th Cir. 1994).

Because it is undisputed that Drake, Isaacs and Freeman did not have tasers and did not use any force against Plaintiff, the only way these Defendants can be held liable in this case is for Plaintiff to show that there was excessive force *and* that Drake, Isaacs, and Freeman had a reasonable opportunity to intervene and did not do so. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

14

However, even if the Court finds that there was an underlying constitutional violation, Defendants Drake, Freeman and Isaacs cannot be held liable under a theory of failure to intervene because no facts show that they had a realistic opportunity to intervene even if they had perceived harm was occurring.

Defendants Drake, Freeman and Isaacs testified that they had no warning that tasers were going to be used and that they only realized they were being used after they had already been deployed. (UMF 44, 49, 53, 54). Further, Drake and Freeman testified that at the time of the incident, they were not even aware that Plaintiff had been tased while on the ground **until after** they watched the video. (UMF 43, 48). Thus, even if the Court finds that any one of the tasers that was deployed constituted excessive force, Defendants Drake, Freeman, and Isaacs cannot be held liable for failure to intervene because no facts show that they had forewarning or knowledge that a taser would be deployed at any time prior to its deployment.

Moreover, Plaintiff was justifiably arrested. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County, Ill.*, 705 F.3d at 713. Courts are not concerned as to whether a suspect could be convicted but only as to whether an officer had probable cause to arrest. *Id*. at 718 (To form a belief of probable cause, an arresting officer is not required to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute). Defendants received a complaint that Plaintiff was driving erratically and committing domestic violence toward his passenger. When Plaintiff was pulled over, he, his passenger, and his car were covered in wine. Plaintiff appeared on the video and to the officers on the scene to be intoxicated. Plaintiff then proceeded to fail

three field sobriety tests and refused to take the PBT. Even if Plaintiff argues that his charge for Driving under the Influence was ultimately dismissed, that fact is immaterial to the analysis of whether the arrest was justifiable. Thus there is no evidence that Plaintiff's arrest was anything but justifiable under the circumstances.

Finally, even if the Court were to find that excessive force was used *and* Defendants Drake, Freeman and Isaacs knew about the excessive force at the time, Plaintiff cannot show that they had a realistic opportunity to intervene. Drake, Freeman and Isaacs all testified that after Plaintiff was placed under arrest, everything happened very quickly. (UMF 41, 54). In fact, the time-stamp on the video shows that the time between when Drake and Isaacs told Plaintiff to put his hands behind his back and Plaintiff being handcuffed was less than a minute. (Ex. H). The incident is therefore precisely the type of pressurized, swiftly developing requiring officers to make split-second decisions situation that courts have indicated should be given due regard. *Graham*, 490 U.S. at 396-97.

### 3. Defendants Drake, Isaacs, and Freeman are Entitled to Qualified Immunity

Even if the Court were to determine that the use of force was excessive and that Defendants had a reasonable opportunity to intervene, Defendants Drake, Isaacs and Freeman are entitled to Qualified Immunity. Qualified immunity affords enhanced deference to officers' on-scene judgments about the level of necessary force. *Abbott*, 705 F.3d at 725. Even if the plaintiff demonstrates that excessive force was used, he must further establish that it was objectively unreasonable for the officer to believe that the force was lawful. *Id*. In other words, plaintiff must demonstrate that the right to be free from the particular use of force under the relevant circumstances was "clearly established." *Id*. For qualified immunity purposes, a right is clearly established if the contours of that right are sufficiently clear that a reasonable officer would

16

understand that his actions violated that right. *Id*. In other words, existing precedent must have placed the constitutional questions beyond debate. *Id*. So long as a reasonable officer could have believed that his conduct was justified, a plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless. *Estate of Williams E. Williams v. Indiana State Police*, 14-2523 (7th Cir. 2015) *quoting Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1229 (9th Cir. 2014).

If there is no precedent clearly established to show that there was no objective need for the particular force used in the particular circumstances, then officers have no fair and clear warning of what the Constitution requires in the situation faced, and qualified immunity should apply. *Id*. *Sheehan* cautions against interpreting the "clearly established law" requirement too broadly and substituting general propositions of law for cases that are factually similar enough to apprise the officers of the contours of the constitutional protections due in the situation. *Estate of Williams*, pg 10. Plaintiff has the burden to demonstrate that the right to be free from the particular use of force under the relevant circumstances was 'clearly established." *Abbott*, 705 F.3d at 725.

Plaintiff was clearly resisting arrest by tensing his arm, spinning around, and crouching down after Drake and Isaacs told him to put his hands behind his back and Drake and Freeman attempted to place his hands behind his back. Under a qualified immunity analysis, Plaintiff must show that there is analogous case to facts before the Court. After a reasonable search, Defendants have been unable to find a "factually similar" case that would be enough to apprise Drake, Freeman, and Isaacs of the constitutional protections due in this particular situation, either with respect to the arrest or the failure to intervene.

Moreover, a qualified immunity analysis requires the Court to consider the perspective of a reasonable officer as opposed to the Plaintiff's perspective. *Graham*, 490 U.S. at 396. *See, Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 712 (7th Cir. 2013)("As to the second employment of the taser, the court dismissed [Plaintiff's] testimony that she did not comply because she could not move because 'what matters for this question is not the arrestee's perspective but rather the perspective of a reasonable officer on the scene.'"). Thus, even if Plaintiff argues that he was not trying to escape or resist or that he was unable to comply with the officer's orders while on the ground, those are subjective facts, known only to Plaintiff at the time of the incident. Likewise, Plaintiff's thoughts or intentions were unknowable to a reasonable officer at the time of the incident.

## CONCLUSION

Defendants Drake, Freeman and Isaacs did not use any force against Plaintiff. Moreover, Plaintiff resisted arrest, and the tasers used against him were not excessive. However, even if the Court were to find that excessive force occurred, Defendants did not have a reasonable opportunity to intervene to stop the force. Finally, under these facts, Defendants Drake, Freeman and Isaacs are entitled to Qualified Immunity.

WHEREFORE, for the reasons articulated above, Defendants KEVIN DRAKE, JARED FREEMAN, and SHAWN ISAACS respectfully request this Honorable Court grant Summary Judgment as a matter of law.

                                                                        Respectfully submitted,

                                                                         KEVIN DRAKE, JARED FREEMAN, and
                                                                         SHAWN ISAACS,

                                                                                Defendants,

                                                                         LISA MADIGAN, Attorney General
                                                                         State of Illinois,

Emma Steimel (6304075)
Assistant Attorney General                       Attorney for Defendants,
500 South Second Street
Springfield, Illinois 62706                      By: /s/ Emma Steimel
Phone: (217) 782-1841                                Emma Steimel
Fax (217) 782-8767                                    Assistant Attorney General
Email: esteimel@atg.state.il.us
Of Counsel.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS**

| | |
|---|---|
| ISAAC W. CAPPS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KEVIN DRAKE, JARED FREEMAN, )<br>SHAWN ISAACS, JAMES TROGOLO, )<br>KEVIN ROYE, and BRICE SHAFFER, )<br>)<br>Defendants. ) | No.  14-441 |

**Certificate of Service**

I hereby certify that on October 8, 2015, I electronically filed the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Ms. Judith Redwood:  redwoodlaw42@hotmail.com
Joseph A. Bleyer:  jableyer@bleyerlaw.com
James C. Cook:  jcc@wawpc.net

                                                                                                                                Respectfully Submitted,

                                                                                                                                /s/ Emma Steimel
                                                                                                         Emma Steimel, #6304075
                                                                                                          Assistant Attorney General
                                                                                                          Office of the Illinois Attorney General
                                                                                                          500 South Second Street
                                                                                                          Springfield, Illinois  62706
                                                                                                          Phone: (217) 782-1841
                                                                                                          Facsimile: (217) 782-8767
                                                                                                          Email: esteimel@atg.state.il.us