IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ISAAC W. CAPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:14-cv-441-NJR-DGW |
| v. | ) | |
| | ) | |
| KEVIN DRAKE, JARED FREEMAN, | ) | |
| SHAWN ISAACS, JAMES TROGOLO, | ) | |
| KEVIN ROYE, and BRICE SHAFFER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

## I.
### INTRODUCTION

This is a civil rights action filed on April 15, 2014 by Plaintiff, Isaac W. Capps, through his attorney, Judith M. Redwood brought pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff alleges that Defendants Kevin Drake, Jared Freeman, and Shawn Isaacs (Illinois State Police Officers), Kevin Roye and Brice Shaffer (Franklin County Deputy Sheriffs), and James Trogolo (West Frankfort Police Officer) used excessive force and failed to intervene while Plaintiff was placed under arrest on April 17, 2012. This Order addresses Plaintiff's counsel's statutory claim for fees.

Following a 5-day jury trial before United States District Judge Nancy J. Rosenstengel, Plaintiff prevailed on his failure to intervene claim against all Defendants and prevailed on his excessive force claim against Defendants Trogolo and Roye (losing on this same claim to Defendants Drake and Shaffer). Plaintiff was awarded $22,000.00 in compensatory damages and $10,092.00 in punitive damages, which were assessed as follows: $23.00 (each) against

Defendants Drake, Freeman, Isaacs, and Shaffer, and $5,000 (each) against Defendants Trogolo and Roye. The jury's damage award, which totaled $32,092.00, was a modicum of Plaintiff's quixotic pre-trial demand of $3.6 million which, while unrealistic in its own right, also unrealistically required Defendants to admit liability.

Post-trial, on February 24, 2016, Plaintiff, through Attorney Redwood, filed a motion for attorney's fees and costs seeking an award of $397,622.50, which she peculiarly and without support multiplied by a factor of two for a total request of $795,245.00. Plaintiff also seeks statutory post-judgment interest on the Court's award of attorney's fees (Doc. 186).

Judge Rosenstengel ordered the parties to appear for a settlement conference before Magistrate Judge Wilkerson in an attempt to resolve the pending motion for attorney's fees as well as motions for judgment as a matter of law filed by all Defendants following trial. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (In accordance with the Supreme Court's admonition that "[i]deally, of course, litigants will settle the amount of a fee"). The settlement conference, which was held on June 6, 2016, did not prove fruitful. Prior to the settlement conference, Plaintiff's counsel filed a supplemental motion for attorney's fees for post-judgment proceedings on May 30, 2016 (Doc. 219). In this motion, Ms. Redwood seeks an additional $26,657.50 in attorney's fees and expenses related to the time and expense involved in responding to Defendants' post-trial motions, as well as prospective fees for the time and expense associated with attending the June 6, 2016 settlement conference. Prudently, following the settlement conference, Ms. Redwood withdrew her unfounded request for doubled fees (Doc. 221).

Plaintiff's motions regarding attorney's fees were referred to the undersigned and a

hearing was held on September 6, 2016.[1]

The Court has carefully considered the briefs of the parties, as well as the arguments made at the hearing and, for the reasons set forth below, Plaintiff's Petition for Attorney's Fees and Costs (Doc. 186) is **DENIED** as to the request for attorney fees. For the same reasons, Plaintiff's Supplementary Petition for Attorney's Fees for Post-Judgment Proceedings (Doc. 219) is **DENIED**.

Because the Court of Appeals may disagree with the outcome of this Order regarding the denial of attorney's fees, an alternative analysis granting them is included[2].

In short, the request for attorney's fees in denied because:

- Plaintiff's counsel has overreached and violated the Rules of Professional Conduct governing attorneys practicing in the State of Illinois and before this Court by attempting to charge an excessive fee in the instant case and this is not the first time she has done so;

- The fee contract Plaintiff's counsel entered into with the Plaintiff violates the Rules of Professional Conduct because it does not delineate if costs are deducted before or after the contingent fee is calculated and because it permits counsel to collect fees against her client based upon breach, but does not give her client that

---

[1] The undersigned has developed an interest in attorney fee litigation and has experience handling fee claims while on the federal bench as well as historical experience as a Commissioner for the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). Under separate order, Judge Rosenstengel addresses the costs aspect of the motion.

[2] On March 3, 2016, Ms. Redwood filed a "Notice of Withdrawal of Claim for Hotel Costs" indicating that Plaintiff "hereby withdraws his claim for hotel costs from 28 U.S.C. § 1920 Bill of Costs," but "gives Notice that he is requesting reimbursement of hotel costs under 42 U.S.C. § 1988" (Doc. 198). As this Notice fails to effectively motion the Court to order reimbursement of hotel costs pursuant to § 1988, *see* FED. R. CIV. P. 7(b), and the Court declines to construe said Notice as a motion to supplement Plaintiff's request for attorney's fees, any reimbursement of hotel costs will not be considered, even in the Court's alternative analysis.

reciprocal right;

- Plaintiff's counsel's settlement evaluation, posture and demands made it clear she placed her pecuniary interest over her client's interests;

- Plaintiff's counsel filed frivolous motions, and unnecessarily duplicated the proceedings, which inflicted unnecessary costs on her opponents and wasted the Court's time; and

- Many of Plaintiff's counsel's claims of attorney time and costs are duplicative or unwarranted.

The undersigned recognizes its decision to award no fees is extraordinary. It is the first time since joining the bench the undersigned has refused to award statutory fees.[3] But Plaintiff's counsel's unethical conduct, outrageous settlement demands and posturing, and frivolous filings coupled with her slash and burn litigation tactics warrant the conclusion.

## II.
### LEGAL STANDARD FOR AWARDING FEES

Title 42 U.S.C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A plaintiff may be considered a "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley*, 461 U.S. at 433 (other quotation omitted)). In *Farrar*, the Supreme

---

[3] In 16 years of reviewing CJA vouchers only 2 have been reduced by the undersigned—one because the lawyer charged for "fretting" about a case while in the shower, and the other because the lawyer insisted on charging for his secretary to open his emails. Indeed, I spent 6 years on the Defender Services Committee of the Judicial Conference where my stated goal was to increase CJA hourly fees to be on at least parity "with the guys who work on my car."

Court held that although a plaintiff who wins nominal damages is a prevailing party under § 1988, such nominal awards are significant in determining the reasonableness of a fee award. 506 U.S. at 114. Indeed, the Court held that in some circumstances a plaintiff who formally "prevails" should receive no attorney's fees at all. *Id.* at 115. In *Aponte v. City of Chicago*, the Seventh Circuit Court of Appeals indicated that *Farrar* may be appropriately applied in instances where a jury award is greater than $1.00. 728 F.3d 724, 728 (7th Cir. 2013). Section 1988's allowance for a "reasonable attorney's fee" contemplates "reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply. *See Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996). Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation. *See Marek v. Chesny*, 473 U.S. 1, 11 (1985). As taught in *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000), determining whether an offer is substantial is left in the first instance to the discretion of the district court. Nevertheless, an offer is substantial if, as in this case where the initial offer was $47,500.00 and the jury verdict was $32,092.00, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party. In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer. The district court must only consider the substantial settlement offer; it need not reduce the lodestar calculation because of the offer. *Moriarty* stresses that a substantial offer is only one of the factors that a district

court should evaluate in making an attorney's fee award, and (absent an offer complying with Rule 68 where that Rule applies) is not necessarily determinative. The district court may evaluate the settlement offer and decide that under the circumstances of a particular case an unadjusted lodestar method still provides a reasonable attorney's fee.

In *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir. 1982), the Seventh Circuit affirmed the district court's denial of fees in a suit brought pursuant to the Age Discrimination in Employment Act. In its opinion, the Court noted the plaintiff's counsel's refusal to settle the case at an earlier stage "for an amount only slightly less than the amount ultimately agreed upon" (in light of counsel's statements that the defendant could afford to pay more) and "inadequacies of counsel's fee schedule" (including failing to sufficiently describe the type of work performed and the identity and qualifications of the persons who performed the work and their normal billing rate). *Id.* at 608. However, the Seventh Circuit in *Zabkowicz v. West Bend Co., Div. of Dart Industries, Inc.*, 789 F.2d 540 (7th Cir. 1986), departed from *Vocca*, finding that the district court's decision to deny the plaintiff's counsel any fees was an abuse of discretion. In *Zabkowicz*, the district court based its decision (at least in part) on the plaintiff's counsel's exaggeration of hours, significant flaws in the fee petition, and rejection of a settlement offer ($20,000) that was significantly more than the plaintiff's award after a bench trial ($2,763.20). The Seventh Circuit, in reversing the district court, noted that counsel's fee request ($127,515) was not so egregious, or counsel's record keeping so inept, to warrant a complete denial of fees; however, the Court indicated that the district court was free to reduce the hours compensated to a number considered reasonable and could exclude hours based on inaccurate or misleading records. *Id.* at 550.

Although related to denial of costs, rather than attorney's fees, the Court in *Overbeek v.*

*Heimbecker*, 101 F.3d 1225 (7th Cir. 1996), upheld the district court's denial of costs in light of the prevailing party's counsel's repeated misconduct that subjected the court and the opposing party to a "decade of protracted and needless litigation." Also related to costs, a case out of the Northern District of Illinois, *Fairley v. Andrews*, No. 03-C-5207, 2008 WL 961592 (N.D. Ill. April 8, 2008), imposed a 64% reduction of costs based on defense counsel's misconduct in the first stage of the lawsuit wherein counsel was admonished for "engag[ing] in repeated obstreperous pretrial conduct." The misconduct was detailed in *Fairley v. Andrews*, 423 F.Supp.2d 800 (N.D. Ill. 2006).

In assessing a request for attorney's fees, a court may properly reject unsatisfactorily supported claims of attorney's time and also consider whether an "attorney, by pressing questionable claims and refusing to settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim." *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir. 1978).

## III.
### DISCUSSION AND ANALYSIS

#### A.
**Plaintiff's Counsel Has Overreached By Attempting To Charge An Excessive Fee In The Instant Case And The Fee Contract Plaintiff's Counsel Entered Into With Plaintiff Violates The Rules of Professional Conduct Governing Illinois Lawyers**

The Court's conclusion that Plaintiff's counsel has overreached by attempting to charge an excessive fee is evidenced by her inexplicable and unsupported attempt to double her fee request from $397,622.50 to $795,245.00 and her charging a 40% contingent fee in addition to an inflated hourly rate of $450.00[4].

In order to better determine Ms. Redwood's actual billing rates, she was ordered to

---

[4]  Although her contract agreement with Mr. Capps provides for an hourly fee of $385, Ms. Redwood now seeks an hourly fee of $450 in her fee petition.

Page **7** of 29

provide the following documents to the Court for review prior to the Court's hearing on the motions seeking attorney's fees: (1) a copy of the attorney fee contract entered into with Mr. Capps[5]; and (2) copies of five itemized hourly fee bills, for different clients, for each year that Ms. Redwood represented Plaintiff in this matter (*See* Doc. 224). Upon review of the above-mentioned records, the Court finds the requested hourly rates for Ms. Redwood ($450.00 per hour) and her paralegal ($175.00 per hour) are unsubstantiated.

First, Ms. Redwood failed to provide the Court with any documentation indicating that the billing rates she seeks are the actual billing rates she charges in similar litigation. Indeed, at the motion hearing, Ms. Redwood indicated that none of the billing statements provided were for Section 1983 cases. Moreover, the billing statements do not reflect an hourly rate that was bargained-for, charged and ultimately paid. Rather, Ms. Redwood received a retainer fee for each of the cases and backed-into the hourly rate by dividing the retainer amount by the number of hours expended on the matter. As such, the Court does not consider these statements to be evidence of actual billing rates charged in similar litigation.

Further, Ms. Redwood's fee contract with Mr. Capps will not be considered as evidence of an appropriate billing rate as the undersigned found the contract unconscionable at the Motion Hearing for its apparent one-sidedness and failure to comply with the Illinois Rules of Professional Conduct. First, the contract allows Ms. Redwood to retain 40% of Mr. Capps' recovery, *in addition to* charging an hourly rate in the amount of $385.00. This violates the Illinois Rule of Professional Conduct's prohibition against charging an unreasonable fee. *See* ILL. RULES OF PROF'L CONDUCT R. 1.5(a) (2010).   Further, in violation of another subsection of this Rule, the contract fails to address whether expenses are to be deducted before or after the

---

[5]   A copy of the fee contract is attached to this order as "Attachment 1."

contingent fee is calculated. *See Id.* at 1.5(c).   Moreover, the contract called for a $5,000.00 retainer and only covered proceedings at the district court level. Lastly, contrary to case law, the contract indicates that if Ms. Redwood were to bring suit against Mr. Capps, he must pay Ms. Redwood's legal fees, but has no reciprocal requirement if Mr. Capps were to bring suit against Ms. Redwood. *See Lustig v. Hor*n, 315 Ill.App.3d 319 (Ill. App. Ct. 2000).[6]  The Court, however, notes that the contract did not provide for the billing rate Ms. Redwood now seeks—$450.00 per hour from Defendants—while the unconscionable contract agreement with Mr. Capps required payment of an hourly rate of $385.00 plus 40% of his recovery.

**B.**
**Plaintiff's Counsel's Settlement Evaluation, Posture And Demands Made It Clear**
**She Placed Her Pecuniary Interest Over Her Client's Interests**

Plaintiff's counsel's refusal to participate in a third settlement conference—and her refusal to return the phone call of the Magistrate Judge assigned the settlement duties in this case—further illustrates her lack of interest in reducing expense and delay in this matter. In fact, she had the temerity to file a motion (Doc.148) (for which she wants fees of course) asking Judge Rosenstengel as follows:

> This Court should modify the order for settlement
> conference in that the settlement conference is over and
> former Judge Frazier has no further order to continue in his

---

[6]  This is not the first fee contract suffering from similar ethical infirmities that Ms. Redwood has entered into with a client. The motion hearing on fees disclosed another such case exists— *William K. Hawkins v. Rodney S. Mitchell, et al.*, 10-2111, a case filed in the United States District Court, Central District of Illinois.   Disconcertingly, it appears that in *Hawkins*, Ms. Redwood enforced the terms of her contract that may violate Rule 1.5 of the Illinois Rules of Professional Conduct.   Specifically, it appears that Ms. Redwood received an hourly fee of $350.00, amounting to $159,565.00, as well as a percentage of the plaintiff's $150,001.00 recovery, in addition to $5,346.97 in costs.   The undersigned will forward a letter to the Illinois Attorney Registration and Disciplinary Commission, which will be docketed in the instant case, disclosing this information along with a copy of this order.

efforts at settlement. This order will advise former Judge Frazier that he should stop communicating with the parties' counsel, ex parte and will allow Plaintiff's counsel to prepare for trial without fear that she is somehow slighting the federal court by refusing to return calls to former Judge Frazier.

That same motion complained Magistrate Judge Frazier made ex-parte contacts in an effort to settle the case, which of course is exactly how settlement conductors operate.

Defendants initially offered $47,500.00 in settlement. This was later increased, and in response to Defendants' $200,000.00 settlement offer (*see* Doc. 201-10), Plaintiff countered with a demand of $3.6 million dollars *and* sought an admission of liability (*See* Doc. 201-11). What sane defendant would ever pay such a conflated amount in settlement in a case with minimal special damages, no permanent injury and, in addition, admit liability in a case with punitive damage claims? This demand, along with the rebuff of Magistrate Judge Frazier's settlement efforts, made clear that Plaintiff or his counsel wanted a trial and was not serious about settlement. Refusing to settle except on outrageous terms, forced Defendants to incur substantial fees that Plaintiff's counsel later used as a basis for her own fee claim—a practice expressly disapproved by *Mirabal*, *supra*.

Of course, it is within Plaintiff's right to not settle his case.[7] But there comes a time

---

[7] Federal courts do have authority to require parties to engage in settlement negotiations, FED.R.CIV.P. 16(c); FED. R.APP. P. 33; *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 652–53 (7th Cir. 1989) (en banc); *In re LaMarre,* 494 F.2d 753, 755–56 (6th Cir. 1974), but they have no authority to force a settlement. *See, e.g.*, *G. Heileman Brewing Co., Inc.,* 871 F.2d at 653; *United States v. LaCroix,* 166 F.3d 921, 922–23 (7th Cir. 1999); *In re LaMarre, supra,* 494 F.2d at 756; *Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1128 (3d Cir. 1990); *Kothe v. Smith,* 771 F.2d 667, 669 (2d Cir. 1985). "The law does not countenance attempts by courts to coerce settlements." *In re Ashcroft,* 888 F.2d 546, 547 (8th Cir. 1989) (per curiam). ***628*** If parties want to duke it out, that's their privilege. Here, only Plaintiff wanted to "duke it out." The defense offered more than reasonable settlement monies and ought not have to pay for Plaintiff's counsel's self-dealing.

when a reevaluation of that decision ought to be made. In this case, that time occurred when the jury returned its verdict, awarding Plaintiff $32,092.00 on the heels of an unrealistic demand for an admission of liability and $3.6 million. Given that Mr. Capps had a lien in the amount of $28,441.81 for child support impressed upon this verdict, and his contract with counsel required him to pay 40% of his recovery, he would pocket nothing and the lien would not be fully paid. That should have given counsel incentive to swallow her pride and re-open settlement negotiations in an effort to benefit her client. In light of Defendants' substantial pre-trial settlement offers of $47,500 initially, which later increased to $200,000, coupled with the uncertainty of post-trial and appeal proceedings, counsel likely could have increased Mr. Capps' take.[8] Instead, Ms. Redwood made no effort to settle; rather, she continued to rack-up fees that were of no benefit to Mr. Capps.

In addition to considering the difference between the judgment recovered and the amount sought —$32,092.00 plus interest versus a demand of $3.6 million and an admission of liability (and noting no appeal was filed by Plaintiff and judgment is final on the jury verdict)—*Farrar* instructs the Court to consider the public purpose of the litigation and the significance of the legal issue on which the plaintiff prevailed. In that vein, the Court notes the strong public interest in deterring police misconduct and incenting attorneys to take cases involving excessive use of police force. Awarding attorney fees in even nominal damage cases offers incentive to attorneys to accept what would otherwise be an economically unfeasible case. Citing its decision in *Hyde v. Small*, the Seventh Circuit noted that district courts may apply *Farrar* if the plaintiff was

---

[8] It is noteworthy that a pre-verdict, arm's length settlement may well have resulted in a settlement that included more favorable taxation treatment to Plaintiff than the jury verdict provided. Punitive damages are taxable and there was a personal injury component to the claim that would have been non-taxable.

"aiming high and fell short, [and] in the process inflict[ed] heavy costs on his opponent and wast[ed] the time of the court." *Aponte*, 728 F.3d at 728 (quoting *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997)). Such is the case here. More generally, "in determining whether an award should be analyzed under *Farrar*, district courts should look at the entire litigation history, including the number of victories versus unsuccessful claims, the amount of damages sought versus recovered, time expended by the parties, and judicial resources." *Aponte*, 728 F.3d at 728. An analysis of these factors weighs in favor of a *Farrar* application to the case at bar. Punitive damages awarded against four of the defendants was only $23.00 each. Plaintiff dropped his claims of excessive force against Defendants Isaacs and Freeman just two weeks before trial and prevailed on those claims only against Defendants Trogolo and Roye, losing to Defendants Drake and Shaffer. The instant case is a textbook example of a plaintiff aiming high—unrealistically high—and falling short—very short. The ultimate jury verdict of $32,092.00 is .8914% of the $3.6 million dollar demand. Defendants' initial offer of $47,500.00 is 148% of the ultimate jury verdict while their final pre-trial offer of $200,000.00 is 623.2% of the ultimate jury verdict. Clearly Defendants bargained in good faith and more realistically evaluated the case. A realistic evaluation of this case, considering liability, damages and causation could only lead an experienced, reasonable evaluator to recognize this case never had six-figure potential. It is a fact of litigation that cases against law enforcement officers, from a liability standpoint, are difficult for plaintiffs to prevail in. Jurors like the police and often give them most-favored-nation status in evaluating their alleged misconduct. Jurors exercise an even more jaundiced eye when they are asked to award punitive damages against law enforcement where exemplary damages are particularly elusive. As a result, the liability evaluation in this case warranted a discount because of the positive image presented by law enforcement in

general. Plaintiff's compensatory damage claim, due to the lack of provable elements of damages, was particularly anemic in supporting a large damage recovery. The jury was instructed they could only award compensatory damages for past medical care, and past and future physical and emotional pain. His medical bills totaled approximately $3,700.00. Elements of damages normally associated with a large jury verdict were absent in this case. The damage instruction tendered to the jury is illustrative. There was no past wage loss. There was no future wage loss. There was no disability. There was no disfigurement. There was no claim of loss of normal life. There was no claim for future medical expenses. A case with the liability issues outlined above, in conjunction with special damages of only $3,700.00 and no permanent injury, never was more than a low end five-figure case[9] and never merited a seven-figure settlement demand.

The plain fact is that Plaintiff's counsel over-valued and over-litigated this case resulting in the unnecessary expenditure of limited judicial resources while not advancing her client's interest and placing her pecuniary interest above his.

### C.
**Plaintiff's Counsel Filed Frivolous Motions, And Unnecessarily Duplicated The Proceedings, Increasing Costs And Wasting Limited Judicial Resources**

Plaintiff's counsel is an attorney with an unbridled trigger for filing frivolous motions for sanctions while seeking more fees with each filing[10]. A few examples are illustrative of how she

---

[9]Plaintiff's counsel made a final pre-trial demand of $3.6 million dollars along with requiring Defendants to admit liability and she signaled she would ask the jury for $5 million dollars. However, in closing argument she never made such a request and in fact asked instead for a "significant amount of money." Not giving a specific figure, justifying it and letting the jury speculate on what is a "significant amount of money" doomed even a large 5 figure verdict let alone a 6 or 7 figure one. The ultimate jury verdict of $32,092.00 is .64% of her threatened 5 million dollar jury request.

[10]Ms. Redwood is no stranger to allegations of frivolous court filings. The Seventh Circuit Court

needlessly multiplied the litigation in an effort to line her pockets while wasting court resources, causing unnecessary work for opposing counsel and additional fees for their clients while doing nothing to help Mr. Capps in the process. As related above, she filed a motion with the District Judge assigned the case to basically enjoin the Magistrate Judge assigned the settlement conference from attempting further settlement attempts.   Three motions for sanctions she filed were denied at Docket Entries 90 and 109. Most recently, she filed a motion for contempt (Doc. 249) against Attorney Emma Dorothy Steimel, counsel from the Illinois Attorney General's Office because she filed a pleading without entering her appearance (the Illinois Attorney General's Office was already represented in the case through other counsel). And Ms. Redwood wants fees for that filing. Seriously? How does that help Mr. Capps? How does that advance the case? Reduce cost? Shorten delay? It doesn't. It is attorney self-dealing, pure and simple. Any other lawyer acting civilly when faced with this situation would have: 1) done nothing, recognizing the Court's docketing personnel would have caught the error and notified counsel to enter their appearance; or 2) made a courtesy call pointing out counsel failed to enter their appearance. Plaintiff's counsel also has pending before Judge Rosenstengel a motion to strike (Doc. 247) and yet another motion for sanctions (Doc. 241.)

Motions for sanctions are actually very rare in this district. A year or more may pass before the undersigned is confronted with one. That is because good lawyers tend to work

---

of Appeals, speaking through Judge Easterbrook previously warned her: "As we have explained, the Redwoods' principal arguments on the merits were frivolous, but their appeal with respect to discovery sanctions has been successful. Although we have the discretion to award Rule 38 sanctions issue-by-issue as well as appeal-by-appeal, we elect not to do so because fault is widely distributed. It should be plain to the Redwoods from what we have said, however, that any effort to resume this spite contest under another legal theory would not be in their financial interest (and would jeopardize Jude Redwood's future ability to practice law in federal court)." *Redwood v. Dobson, et al.*, 476 F.3d 462, 470 (7th Cir. 2007).

matters out without court intervention and without pulling out the sanction artillery. They pick up the phone rather than the poison pen. Moreover, the bar in this area is relatively small and lawyers are reticent to seek sanctions against an opponent today who may reciprocate in another case tomorrow.

**D.**
**Many Of Plaintiff's Claims Of Attorney And Paralegal Time Are Inadequately Supported, Duplicative Or Unwarranted**

Appended to this order and discussed in detail under "hours reasonably expended" is a line item review of inappropriate hourly charges. They include tasks considered overhead items of a secretarial nature such as photocopying, downloading and transcribing. For example, counsel purports to charge $450.00 per hour for such tasks as "write checks for medical records," "transcribe Jan thru April hours," and "Attorney parking announcement from S. District transcribed into calendar book." Some of the charges of paralegal Erik Redwood, the husband of Plaintiff's counsel who has a year of law school education according to his resume, are duplicative of Plaintiff's counsel's entries.

The instant case is one in which the *Farrar* conclusion that in some circumstances a plaintiff who formally "prevails" should receive no attorney's fees at all is applicable. In light of *Vocca, Overbeek, Fairley* and *Mirabal*, Plaintiff's refusal to settle at an earlier stage when confronted with substantial offers, his counsel's unrealistic evaluation of the case and settlement posturing, her unconscionable fee contract and requests, the inadequacy of her fee schedule in that there are duplicative and unwarranted charges coupled with frivolous filings warrant no fee award.

Plaintiff filed a supplementary petition for attorney's fees for post-judgment proceedings (Doc. 219) seeking post-trial attorney's fees and expenses for time spent traveling to, and

attending, the post-trial settlement conference. For the same reasons above, Plaintiff's motion for fees is **DENIED**.

## IV.

### ALTERNATIVE ANALYSIS SHOULD THE COURT OF APPEALS CONCLUDE AN AWARD OF ATTORNEY'S FEES IS APPROPRIATE

Although the undersigned believes it has reached an appropriate conclusion in not awarding fees, it also recognizes the Court of Appeals for the Seventh Circuit may disagree. Consequently, the following alternate analysis was conducted and made part of this order which does award fees, but not at the level requested by Plaintiff's counsel. The balance of this order, sans the "CONCLUSION" is written in the alternative.

### A.
### Lodestar Calculation

42 U.S.C. § 1988 entitles a "prevailing party" to an award of *reasonable* attorney's fees. Notably, a finding that a party has "prevailed" does not preclude the Court from reducing an award of attorney's fees to account for Plaintiff's rather limited recovery in relation to the amount sought.

As prescribed by the Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Seventh Circuit describes this "lodestar approach" as the "centerpiece" of attorney's fees determinations, finding there to be a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (citations omitted).

**B.**
**Reasonable Hourly Rate**

It is well settled that a reasonable hourly rate is one that is "derived from the market rate for the services rendered." *Id.* at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). As such, evidence of an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* When an attorney utilizes a contingent fee arrangement, the Seventh Circuit advises courts to "rely on the 'next best evidence' of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases'." *Pickett*, 664 F.3d at 640 (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1995) (other citation omitted)). Plaintiff, as the fee applicant, bears the burden of producing evidence sufficient to establish that his requested rates for Ms. Redwood and paralegal Redwood are aligned with those of the prevailing community. *Pickett*, 664 F.3d at 640.

Here, Ms. Redwood seeks an hourly rate of $450.00 for the time expended on this matter and an hourly rate of $175.00 for the time expended by her paralegal, Erik Redwood, and she also intends to charge a contingent fee of 40%. In support of the requested rates, Ms. Redwood submitted an affidavit explaining that based on personal discussions with other civil rights plaintiff's attorneys in Illinois, the market rate for lead attorneys in the civil rights community of Central-Southern Illinois ranges from $300 to $550 per hour, depending on experience, and, for paralegal services, hourly rates range from $150 to $185 per hour (*see* Affidavit of Attorney Judith Marie Redwood, Doc. 186-1, ¶¶ 18-20). This claimed fee range is simply not borne out by the undersigned's experience and a survey of all the judges in this district—four Magistrate Judges, four Article III Judges and a Bankruptcy Judge—belies Ms. Redwood's contention. No

judge in this district has ever awarded attorney fees at the $550.00 level and the undersigned personally confirmed with Chief Judge Shadid of the Central District of Illinois that he similarly is unaware of any such awards.[11]   In her affidavit, Ms. Redwood indicates that in December, 2010 she charged $350.00 per hour for attorney time and $125.00 per hour for paralegal time in a civil rights case in the Central District of Illinois, *William K. Hawkins v. Rodney S. Mitchell, et al.*, 10-2111, receiving payment in full at said rates in December, 2014 (*see* Doc. 186-1, ¶ 22; *see also* Doc. 186-5, Notice in *Hawkins v. Mitchell* matter). For reasons mentioned earlier, the Court will not consider the *Hawkins* case as a comparable because the fee contract was unconscionable. Plaintiff also provided the Court with the affidavit of John Taylor, an attorney admitted to practice in the United States District Court for the Central District of Illinois (*see* Affidavit of John Taylor, Doc. 186-3). According to Attorney Taylor's affidavit, he defended two civil rights cases to verdict in Danville, Illinois, but, most recently, practices as a public defender in the Central District of Illinois. Attorney Taylor indicates that based on his discussions with other attorneys in Illinois he understands that the "hourly rates for attorneys in the Central District of Illinois who practice in federal litigation range from $250.00-$500.00, depending on experience" (*id.* at ¶¶ 5-6).

As the Court is unable to determine Ms. Redwood's true billing rate based on the evidence in the record, the Seventh Circuit counsels the undersigned to look to the next best evidence — the rate charged by lawyers in the community of "reasonably comparable skill, experience, and reputation."   *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205,*

---

[11]   The most recent fee award granted by the undersigned was $160.00, the amount requested, for a commercial transaction case. (*Capaha Bank vs. Delta Center, Inc.*, 16cv-549-MJR). Transactional lawyers typically command more per hour than general practitioners such as Plaintiff's counsel in the instant case.

90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 892, 895 n. 11 (1984)). The affidavit provided by Attorney John Taylor is insufficient to support a finding that the hourly rates requested by Ms. Redwood reflect the rate charged by lawyers in the community. Notably, Attorney Taylor makes no mention of the average hourly rate charged by civil rights attorneys in the Southern District of Illinois and, moreover, his affidavit merely indicates that the rates of those who practice in federal litigation in the Central District range from $250 to $500 per hour. Glaringly, Attorney Taylor makes no assertion regarding the reasonableness of a rate of $450 per hour for a lead attorney or $175 per hour for a paralegal in a civil rights case pending in this District.

As Plaintiff has failed to adequately demonstrate that the rates sought are "derived from the market rate for the services rendered," the Court has the authority to make its own determination of a reasonable rate. *Pickett*, 664 F.3d at 640 (citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)). In making that determination, the Court may review publicly available information about rates charged for similar work in the community. *See Montanez*, 755 F.3d at 554. In this District, attorneys with significant experience in civil rights litigation have been awarded $250 per hour and attorneys with less experience have been awarded $200 per hour. *See Lasswell v. City of Johnson City*, 436 F.Supp.2d 974, 982 (S.D. Ill. 2006). However, the Court is mindful that the *Laswell* decision was issued in 2006 and does not reflect current market rates. As such, the Court uses *Lasswell* as a starting point, but looks to attorney fee awards made in other districts in this Circuit to determine an appropriate hourly rate for Ms. Redwood for the years during which she represented Plaintiff in this matter (2014-2017). A review of recent decisions from other districts awarding attorney's fees in civil rights cases supports a finding that an hourly fee of $350 for Ms. Redwood and an hourly fee of $125 for

paralegal Erik Redwood is reasonable. *See Myatt v. Gladieux*, Cause No. 1:10-cv-64-TLS, 2015 WL 6455387, *2-5 (N.D. Ind. October 23, 2015) (awarding an attorney with 30 years of experience in employment and civil rights litigation $350 per hour and awarding a rate of $75 per hour for a paralegal for time spent litigating a civil rights, class action matter); *see also Cavada v. City of Chicago*, No. 13-cv-1916, 2014 WL 4124273, *3-4 (N.D. Ill. August 18, 2014) (awarding partner-level attorneys an hourly rate of $385 for work on a civil rights case based on the prevailing rate in Chicago, Illinois). As such, the Court shall calculate the lodestar amount using the $350 and $125 hourly rates for Ms. Redwood and paralegal Redwood, respectively. The Court notes these rates are generous in that they derive from Chicago cases where overhead costs are significantly greater than southern Illinois.

## C.
### Hours Reasonably Expended

The Court now turns to the second element of the lodestar calculation — the hours Plaintiff's attorney and paralegal "reasonably expended" litigating his case. While attorneys are entitled to collect their hourly rate for time expended on a matter, "[a]n attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated." *People Who Care*, 90 F.3d at 1314. The Supreme Court has directed that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

Here, Plaintiff asks for compensation for 726.7 hours for Ms. Redwood and 374.9 hours for paralegal Erik Redwood for time spent on this matter through February 24, 2016. Defendants contend that the hours billed by both Ms. Redwood and Mr. Redwood should be

significantly reduced in that they include hours for tasks that are secretarial in nature, and hours that are excessive and duplicative. The Court agrees.

The Court has reviewed the entries that Defendants contend are clerical and finds that the entries cited by Defendants are indeed seeking recovery for tasks that are "easily delegable to non-professional assistance", *see Spegon*, 175 F.3d at 553, and, therefore, are non-compensable for purposes of § 1988. For Ms. Redwood, these clerical tasks account for 38 entries amounting to 27.8 hours and, for paralegal Erik Redwood, these clerical tasks account for 100 entries amounting to 35.3 hours of work. The Court strikes these clerical entries, and reduces the total time spent by both Ms. Redwood and Erik Redwood accordingly. A list of the entries is attached to this Order as "Attachment 2".

Defendants also argue that a number of entries are excessive, redundant, or reflect unnecessary work. The Court is in agreement. Specifically, Defendants argue that these designated entries reflect excessive charges for tasks performed and duplicative efforts of Ms. Redwood and paralegal Erik Redwood on the same task.

With regard to Ms. Redwood's time, Defendants object to her provision of 17.4 hours to draft interrogatories, requests for admissions, and request for production of documents to propound on Defendants over the course of three days (March 10, 2015 to March 12, 2015). Given Ms. Redwood's claimed experience with actions of this nature, and noting the lack of detail in her time entries to support such a significant amount of time to draft written discovery in this matter (with facts and issues that are not novel), the Court finds that a reduction of fifty percent of her time is appropriate. Accordingly, the Court reduces the time spent by Ms. Redwood drafting written discovery from March 10, 2015 through March 12, 2015 by 8.7 hours.

Defendants also object, on the basis of excess, to time entries made by Ms. Redwood on

April 10, April 11, April 14, April 15, June 19-22, July 17, July 18, July 20, August 1, August 10, September 1, and October 2, 2015 amounting to 29.7 hours. The Court has carefully reviewed said time entries and does not find that they are excessive for the work completed or duplicative of another attorney's work. As such, the Court declines to strike those hours from the fee petition.

Defendants' objections to time entries made by Ms. Redwood on April 30, August 27, December 23, December 24, 2015 and January 12, January 15, and January 18, 2016, amounting to a total of 10.6 hours, are well taken. These entries relate to matters that had limited value in furthering the litigation of this case or related to motions that were not ultimately filed with the Court. Accordingly, the Court hereby further reduces Ms. Redwood's time in this matter by 10.6 hours.

Finally, Defendants object on the basis of excess and redundancy to a series of entries dated October 12, 2015 to December 1, 2015, related to Ms. Redwood's preparation of Rule 11 motions for sanctions, which amount to 22.6 hours. The Court has reviewed said entries, as well as the Rule 11 motions (*see* Docs. 102-104), and finds that 22.6 hours is excessive given the relative routine nature of the arguments asserted by Plaintiff. The Court also notes that two of the unsuccessful motions for sanctions are substantively similar, with only minor differences. Accordingly, the Court finds that a fifty percent reduction of Ms. Redwood's time is appropriate and hereby strikes 11.3 hours from Ms. Redwood's time.

Defendants also object to a number of time entries by paralegal Erik Redwood on the basis of excess and redundancy. These entries, dated May 1 and October 13, 2015, and January 1, January 2, January 9, January 15, February 9, and February 23, 2016, amount to a total of 17.3 hours. The Court has reviewed these entries and finds that they are duplicative of work Ms.

Redwood completed, or are excessive in that they had limited value in furthering the litigation of this case. Accordingly, the Court hereby reduces Mr. Redwood's time in this matter by 17.3 hours.

Defendants further object to a number of duplicate entries made by Ms. Redwood and Erik Redwood throughout the course of this litigation. A number of these entries involve preparation for, and attendance at, depositions and settlement conferences, as well as attendance at the trial. With regard to duplicative billing, the Seventh Circuit indicates that although there is no flat rule of one lawyer per case, "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time." *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). In *Jardien*, the Seventh Circuit questioned the district court's attorney's fee award, noting that the trial court did not adequately parse the fees petition for excessive or duplicative time as two attorneys billed eighty to one hundred hours attending the same conference, deposition, or court proceeding. *Id.* The Court also noted that a substantial portion of the "second chair" at the trial did not appear to be fully justified. *Id.* As such, the case was remanded back to the trial court for a determination of attorney's fees. *Id.*

Here, the Court is skeptical about the necessity of paralegal Erik Redwood's attendance at depositions, settlement conferences, and the trial, as well as his billing for the preparation of such proceedings, as Ms. Redwood has also billed significant amounts for that preparation. Indeed, if the Court in *Jardien* found the presence of two attorneys at such proceedings unnecessary, the presence of an attorney and paralegal at proceedings in this matter is certainly questionable. The Court queries if his presence at these matters was more in the nature of companion/husband than paralegal. As Plaintiff has not provided the Court with a compelling reason to allow Mr. Redwood to bill for his duplicative efforts at the depositions of Plaintiff,

Naddaf, Trogolo, Woodsides, Graskewicz, Drake, Freeman, Isaacs, Roye, and Shaffer, or the settlement conferences before Magistrate Wilkerson and Magistrate Frazier, amounting to a total of 34.4 hours, the Court hereby strikes that time from Mr. Redwood's billable hours.

With regard to Mr. Redwood's attendance at trial, the Court again questions the necessity of his attendance as it appears Mr. Redwood performed clerical, rather than paralegal, duties for a significant portion of his time. For instance, in his January 25, 2016 entry, Mr. Redwood bills for "set[ting] up litigation table and assist[ing] in prosecution of plaintiff's case." Certainly setting up the litigation table is a clerical duty that does not warrant $175.00 per hour compensation. Moreover, the Court is unaware of how, exactly, Mr. Redwood assisted in the prosecution of Plaintiff's case. Without more detail in his billing entries to justify his presence at trial, the Court finds the bulk of Mr. Redwood's trial time unreasonable and non-compensable under § 1988. *See Gibson v. City of Chi.*, 873 F.Supp.2d 975, 987 (N.D. Ill. 2012) (deducting 48.7 hours of time billed by junior associate who attended pre-trial events such as depositions and trial, as he did not examine a single witness or make an argument to the Court and some of the tasks billed for, such as organizing and producing files, were determined to be clerical in nature and non-compensable). As such, the Court reduces the 55.4 hours billed by Mr. Redwood over the course of the trial from January 25, 2016 to February 1, 2016 by seventy-five percent, striking 41.55 hours of his time as unreasonable and non-compensable.

Ms. Redwood and Mr. Redwood also seek attorney's fees for time spent driving to and from depositions, settlement conferences, and court proceedings for this matter. As stated previously, the Court questions the necessity of Mr. Redwood's presence at pre-trial events, including depositions and settlement conferences, as well as a significant portion of his time spent at trial. Accordingly, the Court strikes Mr. Redwood's driving time, 61.7 hours, in total.

The last of Defendants' objections to Ms. Redwood and Mr. Redwood's billing entries relates to duplicative time entries on May 2 and September 18, 2015. These entries memorialize discussions between Ms. Redwood and Mr. Redwood regarding strategy as it relates to the use of an expert and the decision of whether to file a Rule 11 motion for sanctions. The Court finds that said entries are not duplicative or excessive and merely reflect the fact that attorneys often "talk[] through a set of authorities or seek[] advice on a vexing problem." *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008). While the Court is certainly aware that Mr. Redwood is not an attorney, the discussions referenced in the above-mentioned time entries relate to topics appropriate for an attorney and a paralegal to consult upon.

Based on the foregoing, the Court strikes a total of 58.4 hours from Ms. Redwood's time, reducing her compensable time to 668.3 hours and, similarly, strikes 190.25 hours from paralegal Redwood's time, reducing his compensable time to 184.65 hours.

The reduction results in a lodestar calculation for attorney's fees as follows:

| | | | |
|---|---|---|---|
| Attorney Redwood | 668.30 hours   x | $350.00 per hour | = $233,905.00 |
| Paralegal Redwood | 184.65 hours   x | $125.00 per hour | = $ 23,081.25 |
| **Total** | | | **= $256,986.25** |

### D.
### Adjustment by Reduction of the Lodestar Calculation

Upon determining the lodestar amount, a court may adjust the award in light of the plaintiff's "level of success." *See Hensley*, 461 U.S. at 436. Indeed, it is well recognized that when the results obtained were not "excellent", the lodestar figure may be adjusted for various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation. *Schlacher v. Law Offices of Phillip J. Rochte &*

*Associates, P.C.*, 574 F.3d 852, 856-57 (7th Cir. 2009) (citations omitted). The degree of success obtained is the "most significant" factor for a judge to consider in deciding what is a reasonable fee. *Connolly v. Nat'l School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 436). When a party obtains a result that is substantially less than its demand and/or the fees that it requests in compensation, case law in this Circuit dictates that a "reasonable" fee be less than the full lodestar amount. *See, e.g., Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000); *Cole v. Wodziak*, 169 F.3d 486 (7th Cir. 1999).

Here, Plaintiff received a jury award of $32,092 and is seeking almost $400,000 in attorney's fees.  While the Seventh Circuit has declined to adopt "any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered," it has been consistent in noting that "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty*, 233 F.3d at 968. As stated previously, the Court finds that Plaintiff was a prevailing party and secured judgment in his favor against each of the Defendants on at least one claim (losing only his claim of excessive force against Defendants Drake and Shaffer). However, the issues in this matter were not novel and the Court does not find that there was significant public interest advanced by this particular litigation. Despite this, Plaintiff now seeks attorney's fees that are more than twelve times his recovery. Importantly, the Seventh Circuit warns against awarding attorney's fees that are large multiples of the damages recovered and such disproportionality will be considered in determining a reasonable attorney's fee award in this case. *See id.*

In addition to considering the disproportionality of the amount of the jury award and the request for attorney's fees, the Seventh Circuit directs district courts to consider substantial settlement offers as a factor in determining an award of reasonable attorney's fees, even in

instances where Rule 68 of the Federal Rules of Civil Procedure does not apply. *Moriarty*, 233 F.3d at 967 (citing *Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996)). The basis for such consideration of settlement offers is that attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party. *Moriarty*, 233 F.3d at 967. The Seventh Circuit advises that an offer is substantial if the offered amount "appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Id.* "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." *Id.*

Here, Defendants assert that they extended an initial offer of $47,500 to Plaintiff at the first settlement conference with Magistrate Wilkerson. Subsequently, following the second settlement conference with Magistrate Frazier, Defendants extended a settlement offer of $200,000. That offer was communicated in writing to Plaintiff's counsel on January 18, 2016 (*see* Doc. 201-10). On January 19, 2016, Ms. Redwood, on behalf of Plaintiff, rejected Defendants' settlement offer and demanded $3.6 million and an admission of liability (*see* Doc. 201-11). Jury trial commenced soon thereafter on January 25, 2016. In view of the actual jury verdict, the Court concludes that Plaintiff significantly overvalued his case. Indeed, at the time of the $200,000 settlement offer, it appears that the jury award, as well as attorney's fees at that point, would have amounted to approximately the same amount as the settlement offer. Based on such finding, and pursuant to Seventh Circuit precedent, the Court finds Plaintiff's rejection of the $200,000 settlement offer evidence that Plaintiff's attorney, Judith Redwood, unduly prolonged this litigation and, as such, a reduced fee award is appropriate in these circumstances.

Due to the significant overreaching of Plaintiff's attorney and rather limited recovery at

trial, the Court finds it appropriate to reduce the lodestar amount in order to calculate a reasonable fee by cutting-off any award of attorney's fees after the date on which Plaintiff, through counsel, rejected Defendants' substantial settlement offer of $200,000. Accordingly, the Court hereby strikes all billable hours entered after January 19, 2016 for both Ms. Redwood and paralegal Erik Redwood. Such reduction amounts to a further discount of 109.1 hours for Ms. Redwood and 26.85 hours for Erik Redwood. The resulting lodestar calculation for reasonable attorney's fees is as follows:

| | | | | | |
|---|---|---|---|---|---|
| Attorney Redwood | 559.2 hours | x | $350.00 per hour | = | $195,720.00 |
| Paralegal Redwood | 157.8 hours | x | $125.00 per hour | = | $ 19,725.00 |
| **Total** | | | | = | **$215,445.00** |

 $215,445.00 is the amount of fees the Court, in the alternative, would award.

### E.
### Supplemental Motion for Attorney Fees for Post-Judgment Proceedings

On May 30, 2016, Plaintiff filed a supplementary petition for attorney's fees for post-judgment proceedings (Doc. 219) seeking post-trial attorney's fees and expenses for time spent traveling to, and attending, the post-trial settlement conference. Plaintiff's motion is **DENIED**. For the reasons set forth above, the Court has determined that attorney's fees shall not be awarded beyond the time that Plaintiff rejected Defendants' substantial settlement offer of $200,000.00 on January 19, 2016.

### V.
### CONCLUSION

For the aforementioned reasons, Plaintiff's Petition for Attorney's Fees and Costs (Doc. 186) is **DENIED** to the extent it requests fees. Costs to be decided by Judge Rosenstengel in a separate order.

Plaintiff's Supplementary Petition for Attorney's Fees for Post-Judgment Proceedings (Doc. 219) is **DENIED**.

   **IN THE ALTERNATIVE ONLY**, and only in the event the Court of Appeals determines a fee award is appropriate, Plaintiff's Petition for Attorney's Fees and Costs (Doc. 186) is **GRANTED IN PART AND DENIED IN PART.** Fees are awarded in the amount of **$215,445.00**. Interest consistent with 28 U.S.C. § 1961 is awarded.   Plaintiff's Supplementary Petition for Attorney's Fees for Post-Judgment Proceedings (Doc. 219) is **DENIED.**

**IT IS SO ORDERED.**

            **DATED: March 30, 2017**

                  *s/ Michael J. Reagan*
                  MICHAEL J. REAGAN
                  Chief Judge
                  United States District Court
                  Southern District of Illinois