IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISAAC W. CAPPS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:14-CV-00441-NJR-DGW ) |
| KEVIN DRAKE, JARED FREEMAN, SHAWN ISAACS, JAMES TROGOLO, KEVIN ROYE, and BRICE SHAFFER, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Second Supplementary Petition for Attorney's Fees, Costs, and Litigation Expenses filed by Plaintiff Isaac Capps (Doc. 282). Capps initiated this lawsuit pursuant to 42 U.S.C. § 1983 in April 2014 alleging that Defendants, all law enforcement officers, used excessive force and failed to intervene in an unlawful search. A jury found in favor of Capps on eight of his ten claims and awarded $22,000 in compensatory damages and $10,092 in punitive damages (Doc. 177).

On February 24, 2016, Capps filed his first motion for attorney's fees and costs (Doc. 186). After a number of further filings, a referral of the motion to Chief Judge Michael J. Reagan, oral argument, the denial of Capps's motion by Chief Judge Reagan, an appeal to the Seventh Circuit, and the reversal of Chief Judge Reagan's order, the motion is once again before the undersigned District Judge. Upon the Court's request, Capps filed the instant supplemental petition for attorney's fees. Capps now seeks a total

of $533,645.71 in fees, costs, and expenses incurred in litigating this case through trial, post-trial motions, and appeal.

## DISCUSSION

42 U.S.C. § 1988(b) provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." To calculate the fee, the district court generally begins with the "lodestar": the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "The party seeking an award of fees" must "submit evidence supporting the hours worked and rates claimed" in support of the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Although the lodestar yields a presumptively reasonable fee . . . the court may nevertheless adjust the fee based on factors not included in the computation," such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. *Montanez*, 755 F.3d at 553; *Hensley*, 461 U.S. at 430.

I.  **Lodestar Calculation**

    A.  **Hourly Rates**

A reasonable hourly rate is the local market rate for the attorney's services, the best evidence of which is the amount the attorney bills for similar work. *Id.* If that figure is not available, a court also may rely on "evidence of rates charged by similarly experienced attorneys in the community" for similar work and evidence of fee awards the attorney has received in similar cases. *Id.* (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir.

2012). "The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." *Id.*

      i.      *Jude Redwood and Erik Redwood*

Plaintiff's counsel, Jude Redwood, provided a supplemental declaration—not notarized or signed under penalty of perjury—stating that she has practiced civil rights litigation since 1999 (Doc. 282-5, p. 2). She has been the lead or solo counsel in 29 civil rights cases between 1999 and 2018, six of which were tried to verdict before a jury (*Id.*). She notes that her work in this case was complex and particularly time-consuming, considering she had three sets of opposing counsel, all of whom litigated the case vigorously (*Id.*, p. 5). Ms. Redwood also states that she regularly communicates with other lawyers who represent civil rights plaintiffs in Illinois about the market rates for attorneys and paralegals in the community (*Id.*). Based on these discussions, it is her understanding that the market rate for paralegal services ranges from $150 to $185 per hour, while the market rate for a civil rights lead attorney in Central or Southern Illinois ranges from $300 to $550 per hour, depending on experience (*Id.*). Attorneys of her experience level in the Chicago area are paid $550 to $650 per hour for the same type of work completed in this case (*Id.*). Accordingly, she seeks an hourly rate of $450 for her services, while she requests an hourly rate of $175 per hour for her paralegal's work.

In similar civil rights cases, Ms. Redwood claims her hourly rate has ranged from $350 per hour to $500 per hour (*Id.*, pp. 5-6). In December 2010, she charged $350 per hour and $125 per hour for paralegal time in a civil rights case in the Central District of Illinois

(*Id.*, pp. 5-6). In 2016, her rates rose to $450 per hour for civil rights litigation in the Central District, and in 2017 her rates rose again to $500 per hour on a civil rights case in the Central District (*Id.*, p. 6). Because federal civil rights litigation is a specialized field, Ms. Redwood states she is certain her services are reasonably worth $450 per hour in the Southern District of Illinois (*Id.*, p. 7).

As pointed out by Defendants, however, Ms. Redwood did not actually provide any evidence that she ever charged or was paid $450 or $500 per hour. Ms. Redwood did provide one signed contract in which the client—a criminal defendant—agreed to pay $500 per hour for her services. But defending against a criminal prosecution is not "similar work" to bringing a civil rights case pursuant to Section 1983. And her claimed hourly fees for other Section 1983 cases are unsupported. Accordingly, because Ms. Redwood has not provided any evidence demonstrating how much she was actually paid for civil rights work, the Court next turns to evidence of rates that similarly experienced attorneys in the community charge paying clients for similar work. *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012).

Capps provided an affidavit from Candace Gorman, a civil rights attorney with 35 years of experience practicing in Chicago (Doc. 282-6). Gorman's affidavit, which is electronically signed under penalty of perjury but not notarized, states that she received an hourly rate of $450 in a Northern District case as an attorney with 13 to 21 years of experience. In 2017, she received $500 per hour for similar work in the Northern District, and currently her hourly rate on a contingent fee basis is $600. Based on Gorman's experience, she states that an hourly rate of $450 for an attorney with Ms. Redwood's

experience is reasonable and consistent with the rates charged by similarly situated attorneys in Illinois. She further attests that $175 per hour is consistent with the rates of similarly experienced paralegals in the civil rights community in Illinois.

Another affidavit electronically signed but not notarized, provided by John Taylor, a Federal Public Defender for the Central District of Illinois, states that hourly rates for federal trial attorneys in that district range from $250 to $500 per hour, depending on experience (Doc. 282-7). Based on this understanding, as well as his familiarity with Ms. Redwood's skills, Taylor attests that it is reasonable for her to charge $450 per hour.

Lastly, Dana Kurtz, an attorney with just over 20 years of experience who focuses on employment-related and civil rights litigation, attests that from 2012 to the present, her hourly rate for civil rights cases is $675 per hour (Doc. 282-8). She charges between $185 and $250 per hour for senior paralegals, and $100 to $150 for other paralegals. She noted that these hourly rates are within the range of rates charged by attorneys of comparable background, experience, and abilities in the Chicago area.

In response, Defendants argue that the rates requested are excessive, and Capps's affidavits do not provide information about the billing rates of comparable attorneys in the Central or Southern Districts of Illinois. Gorman and Kurtz practice in Chicago, while Taylor practices criminal law in Champaign County. Ms. Redwood, however, has only litigated one case in the Northern District of Illinois, and it was dismissed within four months of being filed. Instead, Defendants assert the Court should look to Ms. Redwood's prior fee awards as evidence that a lower rate should be awarded. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 647 (7th Cir. 2011). For example, in *Hawkins v. Mitchell*, No.

10-2111-TSH (C.D. Ill. Dec. 26, 2014), Ms. Redwood accepted $350 per hour.

They further argue that police excessive force cases have become easier to win after the 2014 events in Ferguson, Missouri, and that Ms. Redwood did not exhibit the skill, ability, and qualities at trial to warrant increased or non-local rates. They assert that her examination of the witnesses was cursory, superficial, and incomplete, and Capps's witnesses were ill-prepared and incompletely examined. In sum, they argue, Ms. Redwood's quality of services rendered does not justify her requested hourly rate.

In light of everything discussed above, the Court finds that a reduction of approximately 15 percent—to $385 per hour—is appropriate in this case. This is the rate Capps initially agreed to in his contract with Ms. Redwood, and it is reasonable given recent fee awards in civil rights cases in the Central and Southern Districts of Illinois. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (district court did not abuse its discretion by reviewing publicly available information about rates charged for similar work in the community). For example, in December 2018, the Central District awarded $360 per hour to a civil rights attorney who initially requested a $450 per hour fee. *Norton v. City of Springfield*, No. 15-3276, 2018 WL 6601083, at *3 (C.D. Ill. Dec. 17, 2018). Similarly, in *Pisoni v. Illinois*, No. 12-CV-678-SMY-DGW, 2018 WL 4144495, at *2 (S.D. Ill. Aug. 30, 2018), the Court awarded $200 per hour to an attorney who had requested $400 per hour, based on the hourly rate disclosed in his client engagement letter. Applying a comparable reduction, the Court further finds that a rate of $150 per hour is appropriate for paralegal Erik Redwood.

ii.   *Kenneth Flaxman*

Of the total fees and costs requested by Capps, $66,375 of that is attorney fees for Kenneth Flaxman, the attorney who handled his appeal. Mr. Flaxman billed Capps for 88.5 hours at $750 per hour. Defendants argue that this rate exceeds the rate customarily awarded in the Southern District of Illinois—a fact that Mr. Flaxman readily admits but asserts is justified by his 45 years of experience prosecuting federal civil rights cases, including 200 federal appeals (Doc. 282-3). Mr. Flaxman further states that he recently was awarded $600 per hour in *Fields v. City of Chicago*, No. 10-C-1168, 2018 WL 253716 (N.D. Ill. Jan. 1, 2018), and $575 per hour in *Flora v. Dart,* No. 15-C-1127, 2018 WL 2765919 (N.D. Ill. June 9, 2018). In another recent Northern District case, Mr. Flaxman agreed to accept $725 for 12.5 hours of work (*Id.*). His last litigated fee award prior to these cases was in 1995, when he received $300 per hour (*Id.*). That rate, when adjusted for inflation (but not added experience), equals $494 per hour. Mr. Flaxman's declaration is signed but is not notarized (*Id.*).

Defendants argue that a more appropriate rate in this case would be $575 or $600 per hour. The Court tends to agree with Defendants. While Mr. Flaxman's experience and background is impressive, Capps has presented no evidence that he was unable to find a local attorney to work on his appeal. *See Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 490-91 (7th Cir. 2009) (judges may adjust out-of-town attorney's rate downward when calculating lodestar if local counsel could have provided comparably effective legal services). And Mr. Flaxman has provided no evidence of what he actually bills for similar work—other than the litigated cases noted above where he

was awarded substantially less than $750 per hour.

Accordingly, the Court finds that $625 is a reasonable rate for Mr. Flaxman's appellate work on this case. This amount is higher than the rate awarded to Mr. Flaxman in other recent cases and is approximately commensurate with the 15 percent reduction the Court imposed on the Redwoods' fees.

### B. <u>Hours Worked</u>

The hours worked component of the lodestar must exclude hours not reasonably expended, including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. In determining whether hours are reasonable, the Court must determine whether the task would normally be billed to a paying client and whether certain tasks could easily be delegated to non-professional assistants. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). The Court also may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.

1. *Pre-Trial and Trial*

Capps requests attorney fees for Ms. Redwood for the period of January 20, 2014 through February 24, 2016, for 710.0 hours of work. He seeks paralegal fees for Erik Redwood during the same period of time for 345.4 hours of work. Defendants contend that certain of these hours, as identified in Exhibits 3 and 4, are inadequately documented as well as excessive, redundant, or unnecessary, and, thus, should be denied (*see* Doc. 288-1, pp. 14-19). The Court has reviewed these entries, however, and finds them adequately supported. Furthermore, Defendants provide no explanation as to how these entries are redundant or excessive, and the Court sees nothing obviously wrong with them. Thus,

they will be allowed.

Defendants next argue that certain claimed hours should be denied as administrative or clerical (*see* Doc. 288-1, pp. 1-13). Again, a court should disallow hours spent on tasks "that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553. Courts have found tasks including calling or drafting letters to court reporters, deliveries, organizing file folders, preparing documents, assembling filings, electronically filing documents, sending materials, and docketing or "logging" case events into an internal case tracking system, to be clerical and, thus, non-compensable. *See, e.g.*, *Morjal v. City of Chicago, Ill.*, No. 12 CV 185, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013).

Many of the challenged entries by Ms. Redwood and Erik Redwood have been withdrawn by Capps (*see* Doc. 282-11) (non-highlighted entries withdrawn). Of the remaining entries, the Court finds that several of them constitute administrative tasks and, thus, are not compensable. Specifically, on July 13, 2015, Ms. Redwood billed .5 hours to calling a courthouse, a court reporter, and counsel regarding cancelling a deposition; on August 26, 2015, she billed .2 hours for writing a letter regarding scheduling a deposition; and on October 5, 2015, she spent 1.3 hours preparing documents and exhibits for filing with the Court. Because these tasks are clerical, the Court will deduct 2 hours from her time.

Defendants also assert that certain time entries by Ms. Redwood and Erik Redwood are duplicative. Duplicative time that cannot reasonably be billed to a client also cannot be billed to an adversary through a fee-shifting statute. *Gibson v. City of*

*Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012). Thus, the Seventh Circuit has advised courts to scrutinize fee petitions carefully for duplicative time. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Yet, just because two lawyers have billed for the same task does not mean the hours should be deducted. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir. 2008). The relevant inquiry remains whether the time was "reasonably expended." *Id.*

The Court has reviewed the entries objected to by Defendants and finds that many of the entries are, indeed, duplicative. Both Jude and Erik Redwood charged for reading various court orders and transcripts, and for discussing them with each other (Doc. 288-3). Accordingly, the Court will reduce the challenged time in Defendants' Exhibit 8 by 50 percent, from 11.45 to 5.73 hours for Ms. Redwood and from 12.45 to 6.23 hours for Erik Redwood. Moreover, some of this time is just plain excessive. Ms. Redwood spent 2.5 hours reading Chief Judge Reagan's order on attorney fees, while Erik Redwood spent 2.7 hours. The entire order is 12 pages long; the Court finds 1 hour is a generous amount of time to allow for reading it. The Court will subtract another 1.5 and 1.7 hours, respectively, from their time.

Both Jude and Erik Redwood also attended the same depositions and settlement conferences. While Erik Redwood's attendance at those events may have been helpful, the Court does not believe his attendance was "reasonable and necessary" to the litigation. Accordingly, 34.4 hours will be deducted from Erik Redwood's time (*see* Doc. 288-1, p. 20). His time for attendance at trial, however, will be allowed. Ms. Redwood was the only attorney trying the case for Capps, and Erik Redwood essentially served as

second chair at trial. His presence allowed him to take notes and to assist Ms. Redwood with voir dire, direct and cross-examination, and the jury instruction conference. Thus, the Court finds his time at trial to be reasonable and necessary.

Defendants further challenge travel time for both Redwoods as duplicative. Defendants maintain that Erik Redwood's travel time should be stricken in its entirety. Because the Court has found that Erik Redwood's presence at depositions and settlement conferences was unnecessary and non-compensable, the Court also disallows his travel time—45 hours—for those events (*see* Doc. 288-1, p. 21).

2. *Post-Trial Motion Practice*

Capps next seeks attorney fees related to post-trial motion practice and a mandatory settlement conference, totaling 55.7 hours for Ms. Redwood (48.4 hours + 7.3 hours of driving time) and 7.3 hours (of driving time) for Erik Redwood (Doc. 282, pp. 2-3; Doc. 219). The Court finds Ms. Redwood's time to be reasonable, but Erik Redwood's driving time is duplicative. Accordingly, the Court strikes the 7.3 hours of driving time for Erik Redwood.

3. *ARDC Proceedings*

Capps further seeks fees related to Ms. Redwood defending herself in Illinois Attorney Registration & Disciplinary Commission ("ARDC") proceedings. Upon review of Ms. Redwood's fee agreement with Capps, Chief Judge Reagan referred her to the ARDC for potentially violating the Rules of Professional Conduct. Capps argues that because Chief Judge Reagan published the letter in the court file (an action that Ms. Redwood hints she would sue him over, if he did not "enjoy the protections of judicial

immunity and the litigation privilege"), the attorney fees expended on this issue was "necessary" for the appeal in this case.

The Court does not agree. Section 1988 allows for "a reasonable attorney's fee as part of the costs" to the prevailing part in any action to enforce a provision of 42 U.S.C. §§ 1981, 1981a, 1982, 1983, 1985 and 1986. The fees that *Ms. Redwood* seeks to recover here[1] were not incurred as part of the action to enforce a provision of 42 U.S.C. § 1983, the statute under which this lawsuit was brought. Instead, Ms. Redwood incurred these costs in defending herself before the ARDC. Thus, the 18.9 hours spent by Ms. Redwood and the 4.3 hours spent by Erik Redwood on issues related to the ARDC proceedings will be disallowed. Likewise, the $1,500 that Ms. Redwood spent to hire Kenneth Flaxman to defend her before the ARDC is not Mr. Capps's responsibility to pay and will not be awarded.

4. *Appeal*

As noted above, Capps seeks $66,375 in fees for Kenneth Flaxman's 88.5 hours of work on his appeal. Defendants contend, however, that those 88.5 hours are insufficiently supported, vague, and do not adequately describe the work performed, leaving the Court unable to determine whether the time spent on those tasks was reasonable and necessary to the appeal. Defendants suggest the Court reduce Mr. Flaxman's proposed fee by 50 percent rather than do a line-by-line accounting.

---

[1] That it is Ms. Redwood seeking the fees here as opposed to Capps is evident by her footnote indicating that Chief Judge Reagan's letter to the ARDC would be libelous and constitute intentional interference with prospective business if he did not enjoy judicial immunity, for Capps could not sue Chief Judge Reagan for those torts—only Ms. Redwood could.

Most of Mr. Flaxman's billing entries fall into two categories: "brief, research and drafting," on which he spent 37.5 hours, and "reply: research, drafting," on which he spent 33 hours. The remaining hours were devoted to "preparing for and conducting oral argument" (6.75 hours), "reviewing the record" (2.25 hours), "docketing statement" (1.5 hours), "conference call, mediation" (2.5 hours), "review defs briefs; research for reply brief" (3 hours), and "review briefs for reply" (2 hours).

The Court agrees these hours are excessive for an experienced appellate attorney who has worked on more than 200 federal appeals. The Court of Appeals addressed only two issues on appeal: whether the undersigned had authority to refer the fee petition to another Article III judge, and whether that judge's denial of attorney fees was an abuse of discretion. These are not novel issues. And given the incredibly vague nature of Mr. Flaxman's time entries, it is impossible for the Court to determine whether all 88.5 hours were truly necessary and not duplicative, administrative, or otherwise non-compensable.

Based on these factors, the Court will allow Mr. Flaxman his full time for preparing for and conducting oral argument, reviewing the record, preparing the docketing statement, participating in a conference call and mediation, and reviewing defendants' briefs for the reply, for a total of 15 hours. Mr. Flaxman's 73.5 hours spent on researching and drafting the appellant's brief and reply brief (including his entry for "review defs briefs; research for reply brief") will be reduced by 25 percent (18.38 hours), for a total of 55.12 hours. In sum, Mr. Flaxman will be awarded 70.12 hours of time for the appeal, which the Court finds more than generous given his experience and the relatively low complexity of the appeal.

Defendants also note that Ms. Redwood billed 46.3 hours of time related to the appeal and Erik Redwood billed 15.6 hours related to the appeal, for a grand total of 150.4 hours on the appeal. Defendants assert the Redwoods' time on the appeal is unreasonable considering that Ms. Redwood hired Mr. Flaxman to handle the appeal. And while Ms. Redwood claims her work on the appeal is recoverable because of her intimate knowledge of the facts of the case, many of her time entries show she was researching and drafting legal arguments. Defendants ask that the Court disallow 24.8 hours of Ms. Redwood's time and all 15.6 hours of Erik Redwood's time, as none of his entries reflect that his work was based on his intimate knowledge of the facts.

A review of the challenged time entries proves Defendants are right. Ms. Redwood spent 24.8 hours and Erik Redwood spent 15.6 hours reviewing briefs, researching, Shepardizing, and drafting issues on appeal—work that appears duplicative of that done by Mr. Flaxman.[2] Accordingly, the Court disallows the 24.8 hours of time claimed by Ms. Redwood and the 15.6 hours of time claimed by Erik Redwood as duplicative.

C. **Lodestar Calculation**

For the reasons set forth above, the Court has calculated the total lodestar as follows:

|  | Requested Hours | Disallowed Hours | Total Hours | Rate | Total Award |
|---|---|---|---|---|---|
| **Jude Redwood** | 873.31 | 52.93 | 820.38 | $385 | $315,846.30 |
| **Erik Redwood** | 397.05 | 114.53 | 282.52 | $150 | $ 42,378.00 |
| **Kenneth Flaxman** | 88.50 | 18.38 | 70.12 | $625 | $ 43,825.00 |

---

[2] Of course, the Court cannot know for sure, as Mr. Flaxman's time entries were devoid of any details.

Defendants argue the lodestar for Jude Redwood and Erik Redwood should be adjusted further because the jury awarded only $32,092 in compensatory and punitive damages, rendering the original request for $533,646.71 for fees and costs excessive.[3]

Upon determining the lodestar amount, a court may adjust the award in light of the plaintiff's "level of success." *See Hensley*, 461 U.S. at 436. "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435-36). Where, as here, a plaintiff prevails on only some of his related legal claims, the "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436-37). "Precision is impossible in such calculations, and the district court is entitled to considerable discretion in arriving at an award that it deems reasonable." *Id.* at 976. Nevertheless, the district court must provide some explanation justifying its decision to reduce the lodestar. *Id.*

Here, Capps was successful at trial, *see Capps v. Drake*, 894 F.3d 802, 806 (7th Cir. 2018) (holding this is not a case where the plaintiff "aim[ed] high and fell short"), but he did not obtain "excellent results." The jury awarded a favorable verdict on only eight of his ten claims (Doc. 171).[4] And he was awarded only $32,092 in damages, a meaningful

---

[3] Defendants do not seek to have Kenneth Flaxman's lodestar reduced.
[4] Capps prevailed on his failure-to-intervene claims against each Defendant and on his excessive force claims against Defendants James Trogolo and Kevin Roye. Capps was not successful on his excessive force claims against Defendants Kevin Drake and Brice Shaffer.

sum, but "a far cry" from his last settlement demand of $3.6 million. *See World Outreach Conference Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018) (a verdict well below the plaintiff's "lofty goals" could "hardly be characterized as an excellent result").

The Court also notes that the fee request is quite disproportionate to the damages award. *See Montanez*, F.3d at 557 (quoting *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009)) ("a fee request that dwarfs the damages award might raise a red flag"). Even the revised lodestar for the Redwoods, $358,824.30, is more than 11 times the jury's award.

Finally, there was nothing unique or exceptionally difficult about this case. The legal issues presented (excessive force and failure to intervene) were not particularly complex. *See Ragland v. Ortiz*, No. 08 C 6157, 2012 WL 4060310, at *6 (N.D. Ill. Sept. 14, 2012) ("the legal issues presented here were generally common to cases involving alleged police misconduct and did not explore new territory"). And the impact on the public interest was minimal. In *Ragland*, the district court recognized that "[i]n nearly all Section 1983 cases where a plaintiff prevails, it can be observed that the public interest can be served by 'exposing to light disturbing police malfeasance and grave municipal institutional failures.'" *Id.* (quoting *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007)). As in *Ragland*, however, Capps's incident was isolated to one particular situation, on one specific date, with one specific group of officers. *See id.* There was no "deeper institutional problem exposed" that transcended Capps's individual case. *See id.*

Based on these factors, the Court finds that a lodestar reduction of 20 percent is appropriate in this matter for the fees requested by Ms. Redwood and Erik Redwood.

Accordingly, Jude Redwood is awarded $252,677, and Erik Redwood is awarded $33,902.40 in fees. Kenneth Flaxman is awarded his lodestar of $43,825.00. The Court declines to add interest to these amounts.

### D. Costs

Along with his request for attorney fees, Capps requests supplemental costs in the amount of $917 for the appeal (Doc. 281). He also seeks litigation expenses totaling $2,250.52 for hotel expenses from 2014 through May 30, 2016, $129.46 in hotel costs for the June 6, 2016 mandatory settlement conference, and $1,500 in attorney fees for Mr. Flaxman to represent Ms. Redwood at the ARDC proceeding (Doc. 282).

#### 1. *Appeal Costs*

Capps seeks a total of $917 for the appeal in this case. Defendants do not generally oppose this request, but note that $412 of that amount has already been paid by Defendants. Defendants state that the Court of Appeals taxed $412 in costs along with its mandate. Thereafter, Defendants made their respective payments to Capps. Capps does not dispute this assertion. Accordingly, the Court grants the remaining costs of $505 to Capps, to be paid equally by Defendants.

#### 2. *Litigation Expenses*

Under Section 1988, the prevailing party is entitled to out-of-pocket expenses for which lawyers normally bill their paying clients. *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984). Whether an expense is either reasonable or necessary to the litigation is a fact-sensitive, discretionary inquiry. *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 430 (7th Cir. 1989).

As discussed above, the $1,500 fee that Ms. Redwood incurred in defending herself before the ARDC was not necessary to the litigation and is not Capps's responsibility to pay. Therefore, that expense will be denied.

With regard to the hotel expenses, Defendants primarily object because Capps did not properly motion the Court for reimbursement of hotel costs pursuant to Section 1988.[5] The undersigned rejects that argument and finds that Capps at least alerted the Court to his intention to seek hotel costs as part of his litigation expenses.

Defendants further argue that hotel stays were not necessary for the depositions and settlement conferences that were concluded in a single day or the weekend of January 29-31, 2016, when the jury did not deliberate over the weekend. The Court recognizes, however, that Ms. Redwood is not a local attorney, and travel was required to attend both depositions and court hearings. The Court also notes that Ms. Redwood's firm is located more than two hours away from each of the hotels she stayed at for depositions and trial and that none of the hotel charges were excessive (*see* Doc. 179-2).[6] Accordingly, the Court will allow Ms. Redwood's hotel expenses, except for the charges for Friday, January 29 and Saturday, January 30, 2016. Trial began on Monday, January 25, 2016, and the jury began deliberating on Thursday, January 28, 2016. Jury deliberation did not resume until Monday, February 1, 2016. Thus, the Court agrees that counsel cannot claim

---

[5] Capps initially included hotel costs in his Bill of Costs to be taxed pursuant to 28 U.S.C. § 1920, but subsequently withdrew the request after acknowledging that such costs are not recoverable under the statute. Capps filed a "Notice" with the Court on March 3, 2016, indicating that these expenses should instead be compensable as costs under 42 U.S.C. § 1988 and stating his intention to seek reimbursement under § 1988 instead (Doc. 198). Chief Judge Reagan did not recognize this "Notice" as a valid method of supplementing Capps's motion for attorney fees, however, and did not consider the hotel costs in his analysis.

[6] The most expensive hotel room was only $149.99 before taxes (Doc. 179-2).

costs for the weekend when the jury was not deliberating. The Court therefore reduces the costs sought by $338.98 (*see* Doc. 188, p. 3), as it was reasonable for counsel to stay the night on Sunday when trial was resuming on Monday morning. Capps is thus entitled to litigation expenses in the amount of $2,041.

## CONCLUSION

For these reasons, Plaintiff Isaac Capps's Supplemental Bill of Costs (Doc. 281) and Second Supplemental Petition for Attorney's Fees, Costs and Litigation Expenses (Doc. 282) are **GRANTED in part and DENIED in part**. Capps is entitled to a total of $330,404.40 in attorney fees. Defendants are **ORDERED** to pay $505 in costs related to the appeal and $2,041 in litigation expenses.

**IT IS SO ORDERED.**

DATED:   February 22, 2019

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**